710

## BERMONT OIL CO. v. HELVERING, Com'r of Internal Revenue.

No. 6791.

United States Court of Appeals for the District of Columbia.

Argued April 12, 1937.

Decided May 17, 1937.

Rehearing Denied Aug. 5, 1937.

Joseph F. Moore, of Berryville, Va., for petitioner.

Robert H. Jackson and James W. Morris, Asst. Attys. Gen., and Sewall Key, Herman Oliphant, Isadore Groff, and A. M. Sellers, all of Washington, D. C., for respondent.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

GRONER, J.

Petitioner is a Delaware corporation operating in Oklahoma. In its tax return for the year 1930 it deducted approximately $145,000 as a loss sustained in that year. The Commissioner disallowed the deduction, and the Board sustained his ruling.

Petitioner began to do business January, 1916. At that time it acquired from four brothers $100,000 in cash and approximately seven millions of dollars worth of oil leases, mining rights, and royalty interests in exchange for its entire authorized capital stock of $100,000. The resolution of the board of directors authorizing the exchange is as follows:

"Be it resolved, First: That the Bermont Oil Company accepts the proposition of Messrs. B. B. Jones, M. Jones, R. L. Jones and E. L. Jones, wherein in exchange for the capital stock of this corporation they offer:

"(1) To transfer to the company certain mining rights, leases and royalty interests subject to certain conditions; and

"(2) To pay to this company the sum of One Hundred Thousand ($100,000.00) Dollars as a fund for immediate development and operating expense."

The properties were described in schedules attached to the minutes of the proceedings, and pursuant to the resolution B. B. Jones and M. Jones each paid into the corporation in cash $50,000, and all four brothers severally transferred the oil and mineral properties described in the schedules. The Board of Tax Appeals found that the "conditions," mentioned in the resolution, referred to an agreement between the parties that the corporation would indemnify and save harmless each and all of the contributing stockholders against loss or damage arising out of any litigation or other cause resulting from their former ownership of any of the properties.

Included in the list of properties turned over to the corporation by B. B. Jones was his title to the lessor's share or royalty interest in a property referred to as the George Tucker allotment. This property had been acquired by Jones in 1912 from Thomas B. Slick, the immediate assignee of M. B. Leonard, and Leonard had acquired title at a guardianship sale earlier in 1912 from C. K. Leslie, guardian of George Tucker. Jones apparently leased the oil rights on a royalty basis to the Prairie Oil & Gas Company, and that com-

pany developed a successful well from which Jones received royalty payments from 1912 to January 1, 1916. Petitioner thereafter received the royalties until November 30, 1917, on which date it conveyed the interest, together with other properties, to the Prairie Company, and Jones on the same date executed a deed to that company conveying his fee in the land. On April 9, 1927, George Tucker, a Creek Indian who was an infant when the property was sold in 1912 to Leonard,—having come of age—brought suit in an Oklahoma state court alleging that the sale ·to Leonard was fraudulent and void and asking the court to cancel the deed and to require Jones to account for the value of the oil and gas taken from the land up to the period of transfer to the Prairie Company. In April, 1930, the Supreme Court of Oklahoma held in favor of the Indian and instructed the county court to render judgment in his favor against Jones in the amount of approximately $80,000, plus the amount which Jones had received from the Prairie Company on account of the sale of the land. What judgment, if any, was entered against the Prairie Company does not appear, but as the result of the decision of the Supreme Court Jones in September, 1930, paid $145,000 in settlement of the suit, and in December, 1930, petitioner pursuant to the condition in the resolution referred to, delivered its check in favor of Jones in reimbursement of the amount paid by him.

The Board of Tax Appeals held that the agreement between petitioner and Jones legally bound it to reimburse Jones for the sums paid out by him in settlement of the litigation, but also held that the payment was not deductible as a loss but was a capital expenditure which should be added by petitioner to the cost of the property.

On this appeal the sole question presented is: Did petitioner sustain a deductible loss in 1930 in connection with its reimbursement of Jones for his payment of the judgment? The applicable revenue law is the act of 1928 (45 Stat. 791), and the particular section is subdivision (f) of 23 (26 U.S.C.A. § 23 (f) and note), which section defines, inter alia, allowable deductions from gross income, as follows:

"Losses by corporations.—In the case of a corporation, losses sustained during the taxable year and not compensated for by insurance or otherwise."

Treasury Regulations 74, Article 282, provide that:

"The cost of defending or perfecting title to property constitutes a part of the cost of the property and is not a deductible expense."

Petitioner insists on this appeal (a) that the suit against Jones—and the settlement made by him—was not in defense of his or petitioner's title to the lands involved but that it was in its entirety in the nature of a suit for damages, and that the settlement was, therefore, an "ordinary and necessary expense" and on that ground should be allowed as a deductible loss; and (b) that even if the payment arose out of a suit involving title to property the amount paid was nevertheless deductible because of the fact that petitioner had disposed of the property prior to the time when it became liable for and paid the amount in question. ·Or stated otherwise, that even if the expenditure was properly chargeable against the cost of the property if and when petitioner sold the property, the fact that prior to the time of the payment petitioner had disposed of the property left nothing against which to charge the payment and therefore made it, within the statute, a loss not compensated for by insurance or otherwise. We shall dispose of these two contentions in the order in which we state them.

As we have seen, the suit brought against Jones by the Indian allottee was to set aside his guardian's deed and to recover the land and to quiet title thereto, and for an accounting. He was successful in both aspects of the case, and the decree rendered against Jones required him to account for the royalties received by him over a period of five years in the lease of the oil rights in the land and also the purchase price for the sale of the land. But in our opinion, even if it be conceded that the claimed deduction arose wholly as the result of the payment of "damages" by Jones, and would have been deductible by him, it does ·not follow that this is also true of the payment made to Jones by petitioner. For the character and nature of that payment we must turn to the contract between Jones and petitioner. ·By its terms Jones undertook to contribute certain properties to the company in payment of a definite number of shares of its stock, but upon condition that petitioner would save him harm-

less against loss arising out of any litigation or other cause resulting from his former ownership of the property. Without regard, therefore, to whether the payment by Jones was in the nature of damages, the payment by petitioner was pursuant to a contract obligation assumed as a part of the consideration for the transfer of the properties. If we are correct in this view, no more need be said on this branch of the case. But petitioner, as we have seen, insists that even if this be true neither Jones nor petitioner owned the property at the time the liability accrued, for it had passed from both by a sale to another and for that reason neither Jones nor petitioner was in position to deduct from the ultimate selling price the added cost arising from the payment made necessary by the suit; and that this new element creates a situation within the language of the Act we have quoted.

But we think this position overlooks a fact in the case which in our view is decisive. Jones and his brothers sold to petitioner properties estimated to be worth in the aggregate seven millions of dollars. The schedule of these properties definitely described and identified each particular piece, but there was no segregation of the properties for the purpose of computing or fixing the value of each· piece acquired. Jones did not sell to petitioner the Indian allotment land or rights involved in the law suit for a particular number of shares. He sold and delivered to petitioner his part of the aggregate of all the properties transferred in consideration of 43½ per cent. of the total issued capital stock. Nothing in the record suggests that petitioner had in 1930 sold and parted with *all* of the properties acquired through this purchase from Jones and while, in a case like this where a mixed aggregate of assets is acquired for a given sum, it is difficult to allocate the total purchase price among the several assets, we know of no reason why it may not be done. And since we are of opinion that the payment by petitioner to Jones was an amount paid under its contract of purchase as a contingent part of the purchase price, it was a capital expenditure to ·be added to the cost of all the property, and may even now be allocated to the properties remaining unsold notwithstanding the particular property out of which the liability arose has passed by sale from petitioner's possession. This seems to us to be a reasonable conclusion, and in that view and bearing in mind the established rule that a taxpayer has no right to a deduction from income unless the deduction is specifically provided for by law, we think it our duty to affirm the holding of the Board.

Affirmed.